# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

July 6, 2017
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STEPHANIE DIXON,**
**Claimant Below, Petitioner**

**vs.)    No. 16-0675** (BOR Appeal No. 2051045)
                    (Claim No. 2013030738)

**ARBORS AT FAIRMONT,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Stephanie Dixon, by Lawrence E. Sherman Jr., her attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Arbors at Fairmont, by Lisa Warner Hunter, its attorney, filed a timely response.

The issue on appeal is the appropriate permanent partial disability award that should be granted in this claim. This appeal originated from the June 6, 2014, claims administrator's decision granting a 1% permanent partial disability award. In its December 16, 2015, Order, the Workers' Compensation Office of Judges affirmed the decision. The Board of Review's Final Order dated June 27, 2016, affirmed the Order of the Office of Judges. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Stephanie Dixon, a certified nursing assistant, injured her knee in the course of her employment on May 12, 2013. The claim was originally held compensable for left knee pain. However, a subsequent MRI showed a longitudinal tear of the anterior horn of the lateral meniscus with a small adjacent meniscal cyst. On December 6, 2013, Ms. Dixon underwent a left knee arthroscopy and partial lateral medial meniscectomy. The post-operative course was to

1

include attending physical therapy within one week and following up with her treating physician, Joseph Fazalare, M.D., in two weeks.

On December 19, 2013, Ms. Dixon saw Dr. Fazalare for her two week follow-up. Dr. Fazalare noted that Ms. Dixon failed to attend physical therapy. He encouraged her to go and recommended that she return in four weeks. At her six week follow-up, Dr. Fazalare again noted that Ms. Dixon had not been compliant and only attended four physical therapy sessions. Dr. Fazalare conveyed to Ms. Dixon's case manager that her pain was out of proportion to what is normal. Ms. Dixon continued to attend physical therapy treatments, although on a lesser basis than recommended by her treating physician, over the next few months. Her left knee pain did not subside and caused Ms. Dixon to resort to improper use of a cane and knee brace. Due to her non-compliance, Ms. Dixon's physical therapy treatment was suspended. Ms. Dixon underwent three independent medical evaluations to determine the extent of any permanent impairment.

On May 22, 2014, Ms. Dixon underwent an independent medical evaluation performed by Bill Hennessey, M.D. Dr. Hennessey noted that Ms. Dixon had a history of morbid obesity, hypercholesterolemia, and left knee partial meniscectomy. He determined Ms. Dixon had reached maximum medical improvement and opined that no further treatment was necessary as there was no residual impairment on which to base further treatment. Dr. Hennessey noted that Ms. Dixon's use of a cane was very atypical and bizarre, as was the fact that Ms. Dixon continued to be off work. He noted that this was evidence of symptom magnification and inappropriate illness behavior. Dr. Hennessey assessed 1% whole person impairment due to the partial lateral meniscectomy and opined that there were no physical restrictions preventing her from participating in any vocational or avocational activities of her choice, including her occupation as a certified nursing assistant.

On November 3, 2014, Ms. Dixon underwent an independent medical evaluation performed by Ghazala Kazi, M.D. After physical examination, Dr. Kazi assessed 5% whole person impairment for Ms. Dixon's reduced motor strength of 4/5 at knee extension. Dr. Kazi opined that he could have assessed 20% impairment for Ms. Dixon's use of a cane. However, he believed the use of a cane was temporary and after physical therapy she would be able to discontinue use.

On September 18, 2015, Ms. Dixon underwent an independent medical evaluation performed by Prasadarao Mukkamala, M.D. Dr. Mukkamala diagnosed contusion of the left knee, status post arthroscopic partial lateral meniscectomy as a result of the compensable injury. He assessed 1% whole person impairment due to the partial lateral meniscectomy. Dr. Mukkamala also reviewed the reports of Dr. Hennessey and Dr. Kazi. Dr. Mukkamala agreed with Dr. Hennessey's report but disagreed with Dr. Kazi, stating that neither he nor Dr. Hennessey had noted any weakness of the quadriceps. Dr. Mukkamala noted that Ms. Dixon's gait instability was the result of several factors such as morbidity, excess weight, lack of proper physical fitness, and neurological unsteadiness and thus was not related to the compensable injury, as Dr. Kazi had opined.

On December 16, 2015, the Office of Judges affirmed the claims administrator's decision granting a 1% permanent partial disability award. The Office of Judges thoroughly reviewed and described the evidence of record before noting that three independent medical examinations had been performed. The first, by Dr. Hennessey, indicated 1% impairment for the partial lateral meniscectomy. The second evaluation, performed by Dr. Kazi, indicated 5% impairment due to weakness of the quadriceps. Finally, the third evaluation, performed by Dr. Mukkamala, also indicated 1% impairment for the partial lateral meniscectomy. The Office of Judges noted that Dr. Kazi assessed 5% impairment due to weakness of the quadriceps, which neither Dr. Hennessey nor Dr. Mukkamala, who evaluated Ms. Dixon before and after Dr. Kazi, found. The Office of Judges concluded that it was more likely than not, based on the present record, that Ms. Dixon sustained 1% whole person impairment as a result of the compensable injury and thus affirmed the 1% permanent partial disability award. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on June 27, 2016.

We agree with the conclusion reached by the Office of Judges as affirmed by the Board of Review. Both Dr. Hennessey and Dr. Mukkamala assessed 1% whole person impairment. Dr. Kazi assessed 5% for a weakness that neither of the other evaluators noted. Dr. Fazalare and Dr. Hennessey opined that Ms. Dixon's subjective symptoms are disproportionate to what is normal. Additionally, Dr. Hennessey stated her continued use of a cane and refusal to return to work is evidence of symptom magnification. Further, Dr. Mukkamala attributed Ms. Dixon's gait instability to conditions such as her obesity, not the compensable injury. The evidence of record supports a 1% permanent partial disability award.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: July 6, 2017**

**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker